UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AARON CARTER,

                          Plaintiff,

              v.                                    1:06-CV-461

CITY OF ALBANY, CITY SCHOOL DISTRICT
OF ALBANY, BOARD OF EDUCATION OF
THE CITY SCHOOL DISTRICT OF ALBANY,
ALISON GURRERI, MICHAEL CIOFFI, JOHN
BOUNDS, and JANET PARKER,

                          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                   OF COUNSEL:

DEBORAH H. SHEEHAN, ESQ.
Attorney for Plaintiff
20 West Meadow Drive
Albany, New York 12203

CITY OF ALBANY CORPORATION COUNSEL    GREGORY J. TERESI, ESQ.
Attorneys for Defendants City of Albany and
   Janet Parker
City Hall
24 Eagle Street
Albany, New York 12207

REHFUSS, LIGOURI & ASSOCIATES, P.C.    JENNIFER L. CARLSON, ESQ.
Attorneys for Defendants City of Albany and
   Janet Parker
40 British American Boulevard
Latham, New York 12110

GIRVIN & FERLAZZO, P.C.                      GREGG T. JOHNSON, ESQ.
Attorneys for Defendants City School District   JACINDA HALL CONBOY, ESQ.
   of Albany, Board of Education of the City
   School District of Albany, Alison Gurreri,
   Michael Cioffi, and John   Bounds
20 Corporate Woods Boulevard
Albany, New York 12211

DAVID N. HURD
United States District Judge

## **MEMORANDUM-DECISION and ORDER**

## I. **INTRODUCTION**

Plaintiff Aaron Carter ("plaintiff" or "Carter") brings this action against defendants City of Albany ("City"), City School District of Albany ("School District"), Board of Education of the City School District of Albany ("Board"), Alison Gurreri ("Gurreri"), Michael Cioffi ("Cioffi"), John Bounds ("Bounds"), and Janet Parker ("Parker") (collectively "defendants") asserting various federal and state law causes of action.  Specifically, plaintiff brings claims of malicious prosecution and abuse of process pursuant to state law (First through Fifth causes of action); municipal liability for the deprivation of his federal constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983") (Sixth cause of action); conspiracy to deprive him of his civil rights pursuant to 42 U.S.C § 1985 ("§ 1985") (Seventh cause of action); and neglect to prevent wrongs mentioned in § 1985, pursuant to 42 U.S.C. § 1986 ("§ 1986") (Eighth cause of action).

## II. **FACTS**

Plaintiff, an African-American male, worked as a teacher's assistant at Albany High School in defendant School District.  He worked in the special education classroom of defendant Gurreri, a Caucasian female.

On November 29, 2004, Gurreri taught a lesson about Kwanza from a book she had purchased and brought to school.  Plaintiff subsequently used the book to engage students in further lessons about Kwanza during their free time.  At some point, Gurreri removed the book from the classroom.  When plaintiff inquired about the book, she told him it was on loan

to someone else.  Carter asked where she purchased the book so that he could purchase an additional copy.  Gurreri told him that she purchased it at the Christmas Tree Shop but that "she hoped there were no more."  (Compl. ¶ 18.)

Upset by Gurreri's actions, plaintiff recounted the incident to Gurreri's supervisor and asked him to intervene in the matter.  Plaintiff believes that Gurreri's supervisor spoke to her about the incident.

A week later, Gurreri had the students color Santa Claus figures.  She allowed a Jewish student to color a menorah.  However, when the plaintiff attempted to allow an African-American student to color a kinara, a candle holder used in Kwanza celebrations, Gurreri took it out of their hands and demanded that the student color a Santa Claus.

Following the close of school that day, plaintiff approached Gurreri to discuss the incident.  Gurreri expressed her feeling that Kwanza was not "culturally relevant."  Further, she stated that because the high school was only forty-percent African-American, it would not be taught in her classroom.  Plaintiff disagreed with her estimate of the number of African-American students in the high school and suggested that the number was closer to seventy-percent of the student body.  He discussed his belief that Kwanza could be a motivational tool for African-American students.  Gurreri dismissed plaintiff's assessment and told him that she was "the boss" in the classroom.  (Compl. ¶ 28.)

After this conversation, Gurreri assigned additional tasks to plaintiff that were not assigned to either of her other teacher's assistants.  In particular, she tasked him with making copies of workbook pages after school for use in the next days' class.  The number of workbook pages Gurreri ordered plaintiff to copy steadily rose.  One night she assigned him five full workbooks to copy.  Each workbook was approximately 80-100 pages.  After school

that day, plaintiff went to the copy room to complete his assignment.  However, he noticed that a sign was posted above the copier stating that users of the machine were limited to only thirty copies at a time.  This meant that plaintiff could copy no more than about half of one of the five workbooks.  Plaintiff exceeded the thirty page limit and copied one entire workbook.  He returned the books to Gurreri's desk, and attached a note stating that because of the new copy policy he was unable to complete all the work defendant had assigned.

The next day, Gurreri asked to speak with Carter privately in an empty classroom near her own.  Once inside the room, defendant upbraided plaintiff for failing to complete his assignment.  Plaintiff attempted to explain why he had not completed the copies, but Gurreri cut him off exclaiming that she was "the boss of [plaintiff]."  (Compl. ¶ 38.)  Plaintiff disagreed with Gurreri's statement that he was her direct report, and asked that they go speak to a school administrator to clarify the issue.

Gurreri then left to return to her classroom, and plaintiff followed.  Their discussion continued even as they entered the classroom full of students.  Gurreri demanded that plaintiff leave.  He refused, and told Gurreri that she was a "young immature white girl." (Compl. ¶ 42.)  Gurreri continued to demand that plaintiff leave, and again he refused declaring to Gurreri that she could not tell him what to do.  Gurreri then used the classroom phone to request assistance.  Shortly thereafter, administrators arrived at the classroom and Gurreri claimed that plaintiff assaulted her.  When confronted by defendant Cioffi, the school's principal, plaintiff denied that he had assaulted Gurreri.  Cioffi told plaintiff that because he was accused of assaulting a co-worker he must leave school grounds.

Cioffi did not investigate Gurreri's allegation further.  Cioffi then met with Gurreri and defendant Bounds, the school's security administrator.  Bounds and Cioffi recommended to

Gurreri that she contact defendant Parker, an Albany city police officer assigned to Albany High School. Gurreri contacted Parker and subsequently signed a criminal complaint against plaintiff alleging misdemeanor assault in the third degree. Cioffi directed plaintiff's union representative to contact plaintiff and ask him to return to the school to make a statement about the incident. Plaintiff refused to return to the school but offered to meet his union representative at another public location.

Upon his arrival at the designated location, plaintiff was met by police who arrested him and took him to the police station. Plaintiff was photographed, fingerprinted, and shackled to a bench for several hours. He was released later that day but ordered to appear in court the next day. The School District placed plaintiff on leave and ultimately discharged him in May of 2005 prior to his criminal trial.

Plaintiff's trial on the assault charge ended in acquittal. He subsequently filed his action in New York State Supreme Court. Defendants removed it to federal district court under 28 U.S.C. § 1443. Defendants now move to dismiss all causes of action under Federal Rule of Civil Procedure ("Rule") 12(b)(6). Oral argument was heard on June 23, 2006, in Albany, New York. Decision was reserved.

### III. STANDARD OF REVIEW

On a motion to dismiss, the allegations in the complaint are accepted as true. See Grandon v. Merrill Lynch & Co., 147 F.3d 184, 188 (2d Cir. 1998). A cause of action will only be dismissed for failure to state a claim under Rule 12(b)(6), if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957). In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately

prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

## IV. DISCUSSION

Since plaintiff brings claims under both federal and state law, and federal jurisdiction is dependant on the existence of viable federal claims, it is appropriate to analyze plaintiff's federal claims first.

### A. Municipal Liability Claim (Sixth cause of action)

The City, School District, and Board defendants move to dismiss plaintiff's municipal liability claim because he has failed to allege the existence of an unconstitutional policy, custom, or practice.

A municipality may be held liable under § 1983 only when a governmental policy or custom causes a constitutional violation. Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978); Wimmer v. Suffolk County Police Dep't, 176 F.3d 125, 137 (2d Cir. 1999); Thomas v. Roach, 165 F.3d 137, 145 (2d Cir. 1999). If there is no constitutional violation there can be no municipal liability under § 1983. City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 1573 (1986). "A municipal policy may be inferred from the informal acts or omissions of supervisory municipal officials . . . . However, a policy or custom may only be inferred if the acts or omissions of a municipality's supervisory officials are serious enough to amount to 'deliberate indifference' to the constitutional rights of a plaintiff." Poulsen v. City of North Tonawanda, 811 F. Supp. 884, 896 (W.D.N.Y. 1993) (citing Villante v. Dep't of Corr., 786 F.2d 516, 519 (2d Cir. 1986)); see also Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993) ("The inference that such a policy existed may arise from circumstantial proof, such as evidence that the municipality so

failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction." (internal quotation marks omitted)). Furthermore, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury. A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy." Dwares, 985 F.2d at 100.

In this case, plaintiff has failed to allege the essential element of a federal constitutional violation. See Heller, 475 U.S. at 499. Plaintiff's malicious prosecution and abuse of process claims arise out of state law and were not brought pursuant to § 1983 and the Fourth Amendment of the United States Constitution. Despite plaintiff's apparent belief that he has alleged an underlying violation of his Fourth Amendment rights, he has not. However, assuming plaintiff did sufficiently allege a constitutional violation, his claim still fails.

Plaintiff claims that the decision by Cioffi to encourage Gurreri to contact the police to investigate the incident rather than to perform his own investigation was the result of a municipal custom, policy, or failure to train that demonstrated deliberate indifference toward his constitutional rights.

It cannot reasonably be argued that encouraging the use of police to investigate allegations of criminal conduct demonstrates "deliberate indifference" to one's constitutional rights. Plaintiff incorrectly presumes that the police always, or even frequently, cause an unconstitutional deprivation of rights if they are called. This presumption is unacceptable.

Municipal liability attaches only when the municipal defendant is the cause of a constitutional violation. See Wimmer, 176 F.3d at 137. The act of calling the police to

investigate an alleged crime, whether as a result of a municipal policy, custom, or failure to train, was not, and cannot be the cause of a violation of plaintiff's constitutional rights. It is simply not to be presumed - and thus not foreseeable - that the likely result of a police investigation would be the deprivation of one's constitutional rights. Thus, plaintiff states no claim for municipal liability under § 1983.

Therefore, because plaintiff can prove no set of facts for which he would be entitled to relief, the City, School District, and School Board's motion to dismiss plaintiff's claim for municipal liability will be granted.

### B. Section 1985 and 1986 Claims (Seventh and Eighth cause of action)

Gurreri, Cioffi, Bounds, and Parker move to dismiss plaintiff's § 1985 claim on the ground that he failed to allege that they acted with racial animus. Additionally, defendants move to dismiss of plaintiff's § 1986 claim on the ground that this claim is dependent on plaintiff successfully stating a claim under § 1985 which, defendants argue, he has not done.

The elements of a conspiracy claim under § 1985(3) are that "defendants (1) engaged in a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; (3) acted in furtherance of the conspiracy; and (4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States." New York State Nat. Org. for Women v. Terry, 886 F.2d 1339, 1358 (2d Cir. 1989). Further, plaintiff must plead facts showing that the conspiracy was motivated by racial animus or invidious discrimination against a protected class of which he is a member. Mian v. Donaldson, Lufkin, Jenerette Sec. Corp., 7 F.3d 1085, 1088 (2d Cir. 1993). This is the

"essential element" of a § 1985 claim. Id. Conclusory, as opposed to factual, allegations that a conspiracy was based on racial animus are insufficient. Id.

In this case, plaintiff's complaint alleges that he and defendant Gurreri had a disagreement over the teaching of Kwanza. He also pleads that he is African-American, and the individual defendants are Caucasian. The only explicit reference to race made by any party noted in plaintiff's complaint was his own statement to Gurreri that she was a "young, immature white girl." Otherwise, his allegations that the other defendants were motivated by racial animus are conclusory. The race of the parties alone is insufficient to draw an inference that they were motivated by race. Even if Gurreri was motivated by race, plaintiff has presented no factual allegations in his complaint that any other defendant was likewise motivated to harm him because of race. See Mian, 7 F.3d at 1088.

Therefore, plaintiff's § 1985 claim will be dismissed. Additionally, because plaintiff has not stated a claim under § 1985, his § 1986 claim will also be dismissed.

### C. State Law Claims (First thru Fifth causes of action)

Defendants move to dismiss plaintiff's state law malicious prosecution and abuse of process claims on grounds which need not be considered. District courts have supplemental jurisdiction over all state law claims that are so related to federal claims over which they exercise original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. §1367(a) (2000). A district court may decline to exercise supplemental jurisdiction over state law claims if it has dismissed all the claims over which it has original jurisdiction. 28 U.S.C. § 1367(c); see also Federman v. Empire Fire & Marine Ins. Co., 597 F.2d 798, 809 (2d Cir. 1979).

Because plaintiff's federal claims will be dismissed, it is appropriate to decline supplemental jurisdiction and remand plaintiff's state law claims to state court. Therefore, defendants' motion to dismiss plaintiff's state law claims will be denied without prejudice.

## V. CONCLUSION

The defendants City, School District, and Board's motion to dismiss plaintiff's claim under §1983 will be granted because plaintiff's allegations do not constitute a cognizable claim for municipal liability. The defendants Gurreri, Cioffi, Bounds, and Parker's motion to dismiss plaintiff's § 1985 claim will be granted because plaintiff has failed to sufficiently allege racial animus. Similarly, their motion to dismiss plaintiff's § 1986 claim will be granted because plaintiff failed to successfully allege a violation of § 1985, a condition precedent to maintaining this cause of action. Finally, defendants' motion to dismiss plaintiff's state law malicious prosecution and abuse of process claims will be denied without prejudice and supplemental jurisdiction over such claims will be declined in accordance with 28 U.S.C. § 1367(c).

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss the federal claims, to wit: the Sixth, Seventh, and Eighth causes of action is GRANTED, and those claims are DISMISSED with prejudice;

2. Defendants' motion to dismiss the state law claims, to wit: the First, Second, Third, Fourth, and Fifth causes of action is DENIED without prejudice to renew;

3. Supplemental jurisdiction is DECLINED; and

    4.  The action is REMANDED to New York State Supreme Court, Albany County.

The Clerk is directed to transfer the case accordingly, and close the file.

IT IS SO ORDERED.

                                                                                              _____
                                                                                              United States District Judge

Dated:  March  22, 2007
         Utica, New York.